J-S05018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RODKEEM ERIC WILLIAMS | : | |
| Appellant | : | No. 1144 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 31, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000732-2022

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED MARCH 27, 2026**

Appellant, Rodkeem Eric Williams, appeals from the judgment of sentence entered in the Chester County Court of Common Pleas, following his open guilty plea to persons not to possess firearms, carrying a firearm without a license, drivers required to be licensed, and driving with a suspended license.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On February 19, 2022, Corporal Jared Davis of the Coatesville Police Department initiated a traffic stop of a Kia Sportage. As Corporal Davis attempted to maneuver his vehicle behind the Kia, the Kia fled. Corporal Davis found the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), 75 Pa.C.S.A. §§ 1501(a) and 1543(b)(1)(i), respectively.

Kia parked in an alley shortly thereafter.  Corporal Davis saw the driver of the vehicle, later identified as Appellant, running from the scene.  During this flight, Appellant discarded a firearm.  Subsequent investigation revealed that Appellant had a prior conviction that rendered him ineligible to possess a firearm.  Further, Appellant's driver's license was suspended.

On May 20, 2024, Appellant completed a written guilty plea colloquy. That same day, the court conducted Appellant's guilty plea hearing and oral colloquy.  At the conclusion of the hearing, the court accepted Appellant's guilty plea for the above-referenced offenses.  Because the parties did not have an agreement as to sentencing, the court ordered a pre-sentence investigation ("PSI") report and deferred sentencing.  (*See* N.T. Guilty Plea Hearing, 5/20/24, at 7).

With the benefit of the PSI report, the court held Appellant's sentencing hearing on October 31, 2024.  At the conclusion of the hearing, the court sentenced Appellant to six (6) to twelve (12) years' imprisonment for persons not to possess firearms.[2]  The court imposed a concurrent term of three (3) to six (6) years' imprisonment for carrying a firearm without a license, plus fines and costs for the Motor Vehicle Code violations.  On November 10, 2024,

_____

[2] With an offense gravity score of eleven (11) and a prior record score of five (5), the standard range of the Sentencing Guidelines provided for a minimum sentence of seventy-two (72) to ninety (90) months.  (*See* Commonwealth's Memorandum in Aid of Sentencing, filed 10/30/24, at 2; N.T. Sentencing, 10/31/24, at 6).

Appellant timely filed a post-sentence motion. In it, Appellant moved to withdraw the guilty plea. Appellant also challenged the discretionary aspects of his sentence. On April 1, 2025, the court denied the post-sentence motion.

Appellant timely filed a notice of appeal on April 29, 2025. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on May 16, 2025.

Appellant now raises the following issues for this Court's review:

> Whether the trial court should have granted Appellant's motion to withdraw guilty plea when, *inter alia*, he was never advised at the time of his plea that he would face a state parole violation?
>
> Whether Appellant's sentence should be vacated as excessive due to the trial court's failure to adequately consider mitigating factors and when he received two sentences for two offenses that should have merged?
>
> Whether this case should be remanded for either a supplemental Rule 1925(a) opinion on the sentencing issue and/or for a hearing on [Appellant's] motion to withdraw guilty plea?

(Appellant's Brief at 10).

In his first issue, Appellant asserts that the court did not conduct a hearing in conjunction with his post-sentence request to withdraw the guilty plea. Appellant complains that the lack of a hearing meant that the court did not develop a record on two arguments supporting withdrawal: 1) Appellant was unaware of possible defenses; and 2) Appellant did not understand why he was pleading to two different charges for one firearm. Appellant maintains

that he raised a third argument in his post-sentence motion, and there is a sufficient record to permit withdrawal of the guilty plea on this basis. Specifically, Appellant claims that he did not know that he was on state parole when he entered the guilty plea. Appellant relies on the fact that he answered "no" during the oral colloquy when asked if he was on probation or parole. Appellant argues "that no one—not plea counsel, not the prosecutor, nor the court—deigned to correct Appellant" when he misstated his parole status. (*Id.* at 17). "An argument could be made that Appellant would have never pled open in this case had he known he was on parole in the first place." (*Id.* at 18). Appellant concludes that this Court must permit him to withdraw his guilty plea or remand the matter for a fact-finding hearing. We disagree that Appellant is entitled to any relief.

Our review of a post-sentence motion to withdraw a guilty plea implicates the following principles:

> Post-sentence motions for withdrawal are subject to higher scrutiny [than pre-sentence motions to withdraw a plea] since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily.

*Commonwealth v. Kehr*, 180 A.3d 754, 756-57 (Pa.Super. 2018) (citation omitted).

"In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea." *Commonwealth v. Hart*,

- 4 -

174 A.3d 660, 664-65 (Pa.Super. 2017). "A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." **Commonwealth v. Reid**, 117 A.3d 777, 782 (Pa.Super. 2015) (quoting **Commonwealth v. Morrison**, 878 A.2d 102, 107 (Pa.Super. 2005)). "Furthermore, nothing in [Pa.R.Crim.P. 590] precludes the supplementation of the oral colloquy by a written colloquy that is read, completed and signed by the defendant and made a part of the plea proceedings." **Commonwealth v. Bedell**, 954 A.2d 1209, 1212-13 (Pa.Super. 2008), *appeal denied*, 600 Pa. 742, 964 A.2d 893 (2009). **See also** Pa.R.Crim.P. 590, *Comment*.

"A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Commonwealth v. Pier**, 182 A.3d 476, 480 (Pa.Super. 2018) (quoting **Commonwealth v. Pollard**, 832 A.2d 517, 523 (Pa.Super. 2003)). "[T]he law does not require that a defendant be pleased with the outcome of his decision to plead guilty. The law requires only that a defendant's decision to plead guilty be made knowingly, voluntarily, and intelligently." **Commonwealth v. Jabbie**, 200 A.3d 500, 506 (Pa.Super. 2018).

"Generally, 'a defendant's lack of knowledge of collateral consequences

of the entry of a guilty plea does not undermine the validity of the plea[.]'"

**Commonwealth v. Thomas**, 270 A.3d 1221, 1227 (Pa.Super. 2022)

(quoting **Commonwealth v. Abraham**, 619 Pa. 293, 304, 62 A.3d 343, 350

(2012)). Regarding the impact of an offender's parole status on the entry of

a guilty plea, this Court has observed:

> [T]he granting and rescinding of parole are purely administrative functions. Parole is a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside the prison walls; **it does not affect the sentence.**

**Commonwealth v. Oliver**, 128 A.3d 1275, 1282 (Pa.Super. 2015) (internal

citations and quotation marks omitted) (emphasis in original). **See also**

**Commonwealth v. Paden**, No. 594 MDA 2025, unpublished memorandum

at 7 (filed February 20, 2026) (explaining: "[A] parole revocation is a collateral

consequence of a guilty plea, and, unless a defendant is affirmatively misled

or erroneously advised about the consequences of his plea, the plea is not

involuntarily and unknowingly entered simply because the defendant was

unaware that his guilty plea would subject him to a revocation sentence").

Instantly, Appellant executed the written guilty plea colloquy on May 20,

2024. In it, Appellant acknowledged the crimes to which he agreed to plead

guilty, as well as the statutory elements for these crimes. (**See** Written Plea

Colloquy, filed 5/20/24, at 1-2). For each offense, Appellant filled out the

maximum possible sentence. (**Id.**) The written colloquy also included

Appellant's handwritten statement of the factual basis for the plea, as well as

Appellant's confirmation that there was no plea bargain. (*Id.* at 2-3). Appellant acknowledged his right to a jury trial and the presumption of innocence. (*Id.* at 7). Finally, the section titled "SENTENCING RIGHTS," appeared as follows:

33. CHOOSE ONE:
    a.    I am not presently on probation or parole.    *Rw*

    b.    I am presently on probation or parole, and I understand that this guilty plea will result in a violation of that probation or parole, and that I may be separately sentenced for that violation of probation or parole.

(*Id.* at 8).

That same day, the court conducted the oral guilty plea colloquy. During the oral colloquy, Appellant explained that he had reviewed each paragraph of the written colloquy with his attorney. (*See* Guilty Plea Hearing at 6). Appellant agreed with the factual basis for the plea, which the district attorney presented at the start of the hearing. (*Id.* at 5). Appellant reiterated his understanding of the charges, the sentencing ranges, his right to a jury trial, and the presumption of innocence. (*Id.* at 4-6). Finally, the court asked Appellant: "Are you currently on probation or parole?" (*Id.* at 6). Appellant responded, "No." (*Id.*)

While Appellant may not be pleased with the outcome of his decision to plead guilty, the law requires only that he made a knowing, voluntary, and intelligent decision to plead guilty. *See Jabbie, supra*. Although Appellant now complains that no one attempted to correct his responses to the questions

about his parole status, Appellant is bound by the statements made in the written and oral colloquies. *See Pier, supra*. Moreover, any parole violation amounted to a collateral consequence to the entry of the plea, and Appellant's lack of knowledge regarding such a consequence does not undermine the validity of the plea. *See Thomas, supra*; *Oliver, supra*. Under the totality of these circumstances, Appellant's plea was valid. *See Hart, supra*. Therefore, Appellant cannot demonstrate a manifest injustice, and he is not entitled to relief on his first issue. *See Kehr, supra*.

In his second issue, Appellant contends that the court failed to consider a statement provided by his grandfather, Reverand James Williams, at the sentencing hearing. Further, Appellant asserts that the court ignored his diagnosis of post-traumatic stress disorder, "which was not elaborated upon on the record." (Appellant's Brief at 19). Under these circumstances, Appellant argues that the court imposed an excessive sentence.[3] Appellant concludes that this Court must vacate the sentence and remand the matter for a new sentencing hearing. We disagree.

_____

[3] Aside from this straightforward challenge to the discretionary aspects of sentencing, Appellant also complains that the sentences for persons not to possess firearms and carrying a firearm without a license should have merged. We need not tarry long with this question, however, where this Court has repeatedly held that sentences for these two offenses do not merge. *See Commonwealth v. Taggart*, 997 A.2d 1189, 1200-01 (Pa.Super. 2010), *appeal denied*, 610 Pa. 578, 17 A.3d 1254 (2011) (explaining that offenses under Section 6105 and Section 6106 do not merge because each offense contains element that other does not).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Phillips, supra* at 112

- 9 -

(emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003).

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Caldwell, supra*** at 768 (quoting ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011)). "Applying ***Mouzon***, this Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa.Super. 2014), *appeal denied*, 629 Pa. 636, 105 A.3d 736 (2014).

Here, Appellant timely filed his notice of appeal, he preserved his issue by including it in his post-sentence motion, and his appellate brief includes a Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. **See id.** Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on

appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* "Where PSI reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988)). "Where the sentencing court imposes a standard-range sentence with the benefit of a [PSI] report, we will not consider the sentence excessive." *Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa.Super. 2022) (quoting *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa.Super. 2011)).

Instantly, the sentencing court had the benefit of a PSI report, counsels' arguments, and the statement from Appellant's family member. Under these circumstances, we can presume the court was fully aware of and considered

- 11 -

mitigating factors, such as Appellant's mental health struggles. *See Watson,*

*supra*. Additionally, the court imposed a sentence within the standard range.

As such, we see no merit to Appellant's claim that the sentence was excessive.

*See Bankes, supra*.

Additionally, the record belies Appellant's claim that the court failed to

consider his diagnosis of post-traumatic stress disorder. In fact, the court

initially raised this diagnosis when providing relevant details about Appellant's

background:

> His father is disabled. His mother is out of work also, due to an unspecified injury. I think it may be related to an illness.
>
> He has good and close relationships with both of his parents.
>
> He denies ever being subjected to incidents of abuse or neglect.
>
> He's single, never been married. He has no children. He lives with his parents in Coatesville.
>
> He was diagnosed with ADHD in fourth or fifth grade. He had an IEP while he was in high school. He graduated from Coatesville in 2009. And he graduated from Automotive Training Center in 2012.
>
> He has been unemployed for the past two years, but does some side work with a landscaping business.
>
> He is supported from a settlement from an auto—looks like an injury or medical malpractice lawsuit, where he receives a set amount of money per month.
>
> He does have debts related to many prior criminal cases.
>
> He was injured in a car accident at the age of 3. Developed problems with his kidneys. He takes medication for that.

He's also asthmatic.

\*     \*     \*

**He does have a medical marijuana card.  He uses that
to cope with anxiety and PTSD.**

(N.T. Sentencing Hearing at 4-5).

At that point, the court asked defense counsel to elaborate on the cause of Appellant's post-traumatic stress disorder.  After conferring with Appellant, counsel responded: "Being incarcerated so many times and dealing with the stressors of that, Your Honor." (***Id.*** at 5).  The court then added that Appellant had "received recommendations in the past that he needs mental health services," and Appellant believed "he could benefit from mental health treatment[.]" (***Id.*** at 5-6).

Thereafter, Reverand Williams provided his statement on Appellant's behalf, which emphasized Appellant's religious upbringing and repentance for his crimes.  (***See id.*** at 10-11).  The court acknowledged Reverand Williams by thanking him for his statement, and then the court asked counsel whether anyone else would be speaking.  On this record, the court adequately considered the mitigating circumstances at issue.  Thus, we see no reason to disrupt the court's sentencing discretion.  ***See McNabb, supra***.

In his final issue, Appellant suggests that this Court remand his case for either: 1) a supplemental Rule 1925(a) opinion on the issue of sentencing; or 2) a hearing on Appellant's request to withdraw the guilty plea.  (***See*** Appellant's Brief at 20).  As we have already determined that these issues are

without merit, we decline Appellant's request for remand.[4]  Accordingly, we

affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2026

---

[4] For the same reasons, we deny the separate application for remand that Appellant filed on December 4, 2025.